## BELL-WAYLAND CO. v. RUSSELL JOBBERS MILLS.

No. 11848—Opinion Filed Sept. 25, 1923.

**1. Sales—Contract to Buy "Requirements" from One Factory—Effect of Estimates in Contract.**

A contract in which a wholesale company agrees to buy its requirements of vinegar from a manufacturing company of food products for a specified time at a fixed price, estimated at 3 to 6 minimum cars, is binding upon the wholesale company to buy all its requirements of this product for the time specified and the amount 3 to 6 minimum cars is an estimate limited by the requirements.

**2. Same — Construction — Commercial Usages.**

A contract as above described is a requirement contract and governed by the rules and usages of commercial transactions.

**3. Same—Evidence.**

In construing a requirement contract as above described, it is the duty of the court to hear any testimony throwing light on the transaction by the words, acts, and conduct of the parties toward each other in making and carrying out the terms of the same.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; Edward D. Oldfield, Judge.

Action by the Bell-Wayland Company against the Russell Jobbers Mills. Judgment for defendant, and plaintiff brings error. Affirmed.

Wilson, Tomerlin & Threlkeld and Abernathy & Howell, for plaintiff in error.

Shirk, Danner & Fowler, for defendant in error.

Opinion by THREADGILL, C. This is an appeal from a judgment of the district court of Oklahoma county, rendered on the 7th day of May, 1920, denying plaintiff damages for alleged breach of contract. The contract was as follows:

"The Russell Jobbers Mills, Manufacturers of Grocers Sundries.

"Rusdun Peanut Butter and Specialties,
"Oklahoma City, Oklahoma,
"Nov. 1, 1916.

"Memorandum of Purchase and Sale.

"The Russell Jobbers' Mills, of Oklahoma City, Okla., sells to Bell Wayland Co., of Oklahoma City, buys their requirements of vinegar for the year 1917, as follows: 3 to 6 minimum cars, at the following prices;

"Pure Apple Cider Vnegar, 40 Gr. Barrels at 15½ Gal., Quart Bottles 5 dz to csk at 1.00 dz Gallons, ½dz c s. at 3.75 doz. bottles 1dz to cs. at 1.20 dz bottles 2 dz to cs at 1.15 dz.

"Compound Distilled & Sugar Vinegar, (Red) or White Distilled 40 gr Barrels at 12c gal. quarts 5 dz cask c 77½c doz. Gallons, ½dz cs. at 3.00 doz 1-2c more for each additional 5 gr on D & S, or White Distilled Vinegar, 1c more for each additional 5 gr on Pure Apple Vinegar 1½c per gallon advance when packed in half-barrels. f. of b. Ok Cy Plant. Delivery, as needed.

"Period—This contract goes into effect Jan. 1, 1917 and remains in force to and including Dec. 31, 1917.

"Terms—Thirty days net or 2% off for cash in 10 days from date of invoice.

"Price Guarantee; * Should lower delivered prices be named, seller agrees to meet same or cancel contract.

"Quality:—The above vinegars are to be branded in compliance with both National and State Pure Food Laws, and cooperage and containers to be first-class in every respect.

"In case of damage or destruction by fire to either party's plant during the life of this contract, same is then at the option of the party sustaining the loss.

The plaintiff was a corporation in the wholesale grocery business in Shawnee, and in the fall of 1916 extended its business by opening a house in Oklahoma City. It sold its goods upon orders to the retail trade. The defendant was a corporation in the business of manufacturing food products and disposed of its products upon orders to the wholesale trade.

On November 1, 1916, the plaintiff, to provide for its requirements in supplying the customers of its Oklahoma City house with vinegar for the year 1917, and the defendant in the usual order of its business, entered into the above agreement made on a blank furnished by the defendant.

The plaintiff, in pursuance of this contract, turned in its orders for vinegar from month to month and by November, 1917, had used about 90 barrels of vinegar. No large orders had been demanded until the one involved in this suit. The plaintiff did not see fit to order three cars as the minimum set out in the agreement, nor did the defendant insist upon delivering three cars, but the business was conducted according to the "requirement" of the retail trade. About November 9, 1917, upon a rapidly rising market, when apple vinegar had increased in price about $6 beyond the contract price, the plaintiff turned in an order for a car of pure apple vinegar, which was refused by the defendant, and this suit was brought for damages for breach on the part of the defendant for refusing to furnish the full three cars of vinegar set out in the contract as the minimum.

1. The plaintiff contends that under the contract it was bound to take three cars and the defendant was bound to deliver three cars of vinegar, and the word "requirement" has no application up to the amount of three cars, but is applicable only to orders between three cars as the minimum and six cars as the maximum.

Upon this theory the plaintiff contends that all the testimony introduced to throw light upon the usages and customs of the business and the acts of the parties under a similar contract of 1916, and the instruction of the court construing the contract as a "requirement contract," and the refusal of the court

to give the instructions asked for by the plaintiff, construing the contract according to its theory, were erroneous and prevented the plaintiff from having a fair trial—all of which would be true if plaintiff's contention as to the meaning of the contract were correct.

The contract as to amount of vinegar is not clear and unambiguous. The printed form seems to have a blank line or space where the amount was filled in:

"The Russell Jobbers' Mills of Oklahoma City, Oklahoma, sell to Bell Wayland Company of Oklahoma City, buys their requirements of vinegar for the year 1917, as follows: 3 to 6 minimum cars at the following prices."

"Buys their requirements of vinegar for the year 1917," is clear enough for us to understand that they contracted to buy all the vinegar they proposed to use during the year 1917, and if there had been no specified amount expressed this would be sufficient in connection with price fixed to bind the plaintiff to buy all its vinegar for the use of its Oklahoma City business for the year 1917 from the defendant and to bind the defendant to fill all bona fide orders. But the expression, as follows: "3 to 6 minimum cars," contains the difficulty and makes the lawsuit. If the words "not less" had been inserted before the 3, the plaintiff's contention would, without doubt, be correct and the case of Staver Carriage Co. v. Park Steel Co. (Ill.) 77 N. E. 174, cited by plaintiff, would be applicable, but without such qualification, it is not clear from the words themselves what is meant, and we must take them in connection with the words going before, and by the acts and circumstances place ourselves in the position of the contracting parties and keep in mind the object they had in view, in order to understand what is meant. 35 Cyc. 95. 96, Ill.

2. The trial court construed this contract to be a requirements contract and governed by the rules and usages in commercial transactions, and in the light of all the facts and circumstances as revealed by the record and the great weight of authority applicable thereto we think the court was correct in this view. 35 Cyc. 207, 111; Smoot v. U. S., 237 U. S. 42, 59 L. Ed. 829; Marx v. American Malting Company, 169 Fed. 582; National Publishing Co. v. International Paper Company, 269 Fed. 903; Loeb v. Winsboro Cotton Oil Co. (Tex.) 93 S. W. 515, (a tax case); Rosenburg Bros. & Co. v. Beales (Cal.) 205 Pac. 18.

3. The question of law being disposed of by the court against the theory and contention of the plaintiff, it was not error to allow testimony throwing light on the entire transaction making the contract and conduct of the parties under it and acts and words as to how they understood it, and it was not error for the court to instruct the jury that, if the defendant had filled all orders of the plaintiff to supply its trade, the plaintiff could not recover, and it was not error to refuse the plaintiff's requested instruction. And while a part of the instruction complained of, to wit: "that under the provisions of the contract the plaintiff in this case was bound to purchase from the defendant not less than three cars," and in the same paragraph, "you are instructed that the plaintiff should not recover notwithstanding less than three cars of minimum capacity may have been delivered," is somewhat inconsistent and confusing, yet we think the whole charge of the court was sufficiently clear for the jury to understand the issues, and that substantial justice was done in the trial of the case, and therefore, the judgment should be affirmed.

By the Court: It is so ordered.